FILED

July 27, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:58 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **MARGARET VIRGIL** | ) | **Docket No.: 2015-05-0274** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 43911-2015** |
| **NISSAN NORTH AMERICA** | ) | |
| **Employer.** | ) | **Judge Dale Tipps** |
| | ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on July 13, 2016, for a Compensation Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2015).  The central legal issues are: (1) whether the condition for which the employee, Margaret Virgil, seeks benefits arose primarily out of and in the course and scope of her employment with the employer, Nissan North America; (2) whether Ms. Virgil is entitled to permanent disability benefits; and (3) whether Ms. Virgil is entitled to past or future medical benefits.[1]  For the reasons set forth below, this Court finds that Ms. Virgil failed to establish by a preponderance of the evidence that she sustained an injury primarily arising out of and in the course and scope of her employment with Nissan.  Accordingly, the Court holds that Ms. Virgil is not entitled to the requested medical and permanent disability benefits.

### History of Claim

Ms. Virgil is a fifty-nine-year-old resident of Rutherford County, Tennessee who worked at Nissan for thirty-one years.  Over that time, she performed a number of jobs, including material handling from 1991 until May 2015.  This work included lifting and tugging small parts, as well as driving a forklift.  Prior to 2015, she had no chronic back pain, but only normal soreness due to twisting while driving the forklift.

Ms. Virgil began having back pain in the spring of 2015, but she did not initially

---

[1] A complete listing of the technical record and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

seek treatment through workers' compensation because she felt an injury claim might affect her bid on a new job. She ultimately got that job, which involved inspecting vehicles as they came down the line. Her new job required more bending and stooping, as her duties included raising the hood, checking for labels, checking fluid in power steering and brakes, opening doors, and inspecting weather-stripping.

Ms. Virgil's new job duties caused her back pain to worsen until she reported the problem to Nissan on June 7, 2015, and requested medical treatment.[2] Nissan sent her to the onsite medical clinic, where she received a panel of physicians. Ms. Virgil selected Dr. Jeffrey Hazlewood from the panel on June 8, 2015. (Ex. 8.)

Dr. Hazlewood saw Ms. Virgil on June 17, 2015. He noted she had a twenty-year history of occasional low back pain. She began having low back pain after she began a job requiring more standing and "a lot of bending." Dr. Hazlewood characterized Ms. Virgil's pain as 60% in her low back and 40% in her right thigh. He did not feel Ms. Virgil's pain was discogenic, but rather mechanical, and he noted she had no radicular symptoms. After his examination, Dr. Hazlewood's impression was "non-specific back pain with probably some musculoligamentous component, probably degenerative spine disease with a history of pre-existing back problems intermittently." (Ex. 10.)

Dr. Hazlewood addressed causation as follows:

I cannot state there is a structural injury here or relation to her work given the total assessment. Per page 199,[3] "The presence of non-specific low back pain cannot be construed as indicative of low back injury." There has been no association scientifically of lifting, awkward postures, or repetitive bending to idiopathic/non-specific back pain. . . . In summary, I cannot state this is a work related injury given this presentation.

*Id.*

After receiving Dr. Hazlewood's office note, Nissan denied Ms. Virgil's claim on June 23, 2015. (Ex. 9.) She then sought treatment under her health insurance with Dr. William Newton on December 21, 2015, for low back and right leg pain. She gave a history of:

a several year history of pain affecting the lower back but this has gotten progressively worse over the past several weeks. The patient denies any

---

[2] Ms. Virgil worked the night shift, so her date of injury variously appears as June 7, when she began her shift, and June 8, when her shift ended. For consistency, and because Nissan does not dispute notice or the alleged date of injury, the Court adopts June 7, 2016, as the injury date for the purposes of this Order.

[3] Of the *AMA Guides to the Evaluation of Disease and Injury Causation, Second Edition.*

2

injury or inciting event although she does have a labor intensive job where she is doing lots of bending and lifting as well as being on her feet for long periods of time. She recently changed her job duties. She used to be a forklift driver which was much better on her lower back. The patient states this is not a workman's compensation claim or injury.

(Ex. 4 at 35.)

Dr. Newton diagnosed piriformis syndrome of the right side, lumbar spondylosis, and semimembranosus bursitis. He recommended physical therapy and exercise, and prescribed Meloxicam. He did not feel Ms. Virgil's condition required surgical intervention. *Id*. at 37-38. In a questionnaire dated January 4, 2016, Dr. Newton indicated Ms. Virgil's lower back and upper leg pain was the result of lumbar spondylosis. He also opined her condition was not primarily caused by her employment at Nissan. (Ex. 10.)

Ms. Virgil underwent an independent medical examination (IME) with Dr. Stephen Neely on May 10, 2016. After examining Ms. Virgil and reviewing her medical records, Dr. Neely noted she had a nerve conduction study and EMG in February 2016 that showed acute radiculopathy on the right. He assigned an impairment rating of 12% to the body, based on motion segment lesion. Also noting she described a history of increasing pain in the workplace, he stated, "I feel that this is a permanent partial workplace injury and the award is commensurate." (Ex. 1.)

The parties took the depositions of Dr. Hazlewood and Dr. Neely. In his deposition, Dr. Hazlewood described Ms. Virgil's complaints as:

[M]echanical, nonspecific low back pain. It did not sound like a disc herniation. It did not sound like true radicular pain. There was no evidence of radiculopathy on exam. So this was a typical chronic back pain and an intermittent back pain with a recurrent episode in an approximately 60-year-old that had had back pain in the past. I would imagine she probably has degenerative spine disease. But, again, no acute pathology on exam objectively.

(Ex. 10 at 9.) When asked about causation, he testified:

I looked at her causation analysis as we're trained to do, and looked at the various factors. First of all, there was no acute event that caused an acute onset of back pain. It was a gradual onset. Number 2, she had preexisting back pain. Number 3, she was approximately 60 years old. So when one looks at these factors, and especially the epidemiology by research literature, and we use the AMA Guides to the Evaluation of Disease and

3

Injury Causation, Second Edition, and they clearly state that such a case is not construed as indicative of a low back injury, . . . that this was a typical idiopathic back pain, in my opinion, and there were many more risk factors than her employment. Therefore, it was less than 50 percent related to her employment and not, in my opinion, related to her job specifically.

*Id*. at 9-10.

Dr. Hazlewood disagreed with Dr. Neely's 12% rating because there was no evidence of a surgical or congenital fusion, which is required for a rating based on a Class II motion segment lesion. He also noted the absence of radiculopathy in either his or Dr. Newton's examination, which would be necessary to justify a 12% rating. He opined that the correct rating, pursuant to the AMA Guides, would be 2%. However, he felt this rating pre-existed her current complaints and estimated her impairment for the current flare-up was 0%. *Id*. at 12-15. Regarding the EMG/nerve conduction study results noted by Dr. Neely, Dr. Hazlewood testified those symptoms developed after he saw Ms. Virgil in June 2015. *Id*. at 16.

In his deposition, Dr. Neely confirmed his opinion that Ms. Virgil's injury was more than fifty percent caused by her work at Nissan and that she retained a 12% permanent impairment. He based this on the finding of "acute S1 radiculopathy." (Ex. 3 at 16, 43.) He acknowledged, however, that Ms. Virgil exhibited no signs of radiculopathy when he saw her, or when she saw Dr. Hazlewood and Dr. Newton. *Id*. at 22-24, 32. He also confirmed he used an edition of the Sixth Edition of the AMA Guides that was later revised by the publisher. *Id*. at 33-36.

Following his deposition, Dr. Neely produced a revised IME report, omitting his original reference to the EMG test results and correcting his original reference to a positive straight leg raise test. He changed his diagnosis to "chronic lumbosacral strain with non-verifiable radicular complaints" and his impairment opinion to 2%. (Ex. 2.)

Ms. Virgil filed a Petition for Benefit Determination on July 28, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN) on August 7, 2015. Following post-discovery mediation, the Mediating Specialist filed a second DCN on June 20, 2016.

At the Compensation Hearing, Ms. Virgil asserted she is entitled to medical treatment, reimbursement of medical expenses, temporary disability benefits, and permanent disability benefits for a back injury arising primarily out of and in the course and scope of her employment. She contended she rebutted the statutory presumption of correctness attached to the causation opinion of Dr. Hazlewood. Specifically, she argued that Dr. Neely based his causation opinion on more reliable and objective information

4

than did Dr. Hazlewood, especially when considered in conjunction with the EMG/nerve-conduction findings.

Nissan countered that Ms. Virgil is not entitled to any additional workers' compensation benefits because she failed to present sufficient evidence that any injury arose primarily out of and in the course and scope of her employment. It argued that, as the authorized treating physician (ATP), Dr. Hazlewood's causation opinion that Ms. Virgil's condition was unrelated to her work is presumed correct under Tennessee Code Annotated section 50-6-102(14)(E) (2015). It further contended Dr. Neely's opinion is not sufficient to overcome the presumption of correctness attached to the ATP opinion.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Ms. Virgil has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2015). In analyzing whether Ms. Virgil has met her burden, the Court will not construe the law remedially or liberally in her favor, but instead must construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Ms. Virgil nor Nissan. *See* Tenn. Code Ann. § 50-6-116 (2015).

*Compensability*

Ms. Virgil's burden includes proving her injury arose primarily out of and in the course and scope of her employment. Tenn. Code Ann. § 50-6-102(14) (2015). To do so, she must show her injury was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Applying these principles to the facts of this case, the Court finds Ms. Virgil has failed to carry her burden. She did describe a set of incidents, identifiable by time and place of occurrence, and Nissan submitted no proof to the contrary. However, the Court finds Ms. Virgil has not established that those incidents contributed more than fifty percent in causing her low back condition.

Although Ms. Virgil questioned the efficacy of Dr. Hazlewood's examination, it is undisputed that his examination included palpating her back for spasm, measuring spinal and hip range of motion, and performing bilateral straight leg raise tests. He also performed neurologic testing, including motor testing, reflexes, and pinprick tests. Dr. Hazlewood's failure to order any diagnostic testing or imaging is not determinative, as he testified that Ms. Virgil's condition did not warrant additional testing. Further, the Court finds it significant that Ms. Virgil's personal physician, Dr. Newton, reached the same conclusion as Dr. Hazlewood after reviewing an MRI of her low back, and that both doctors noted Ms. Virgil's several-year history of back pain. Finally, Dr. Hazlewood specifically noted Ms. Virgil had no radicular symptoms, and referred to the Second Edition of the American Medical Association's Guides to the Evaluation of Disease and Injury Causation in formulating his causation opinion.[4]

Similarly, Ms. Virgil's contention that Dr. Hazlewood's examination lacked "any meaningful review of Ms. Virgil's medical records or employment records" is unpersuasive. Dr. Hazlewood did review the clinic record from Nissan's onsite provider. As this constituted the sum total of her medical treatment to date, it might more accurately be said that he reviewed all of Ms. Virgil's records available at the time. Further, Dr. Hazlewood reviewed Ms. Virgil's EMG/nerve conduction studies during his deposition and explained why they changed neither his diagnosis nor his causation opinion. As for the lack of a job description, Dr. Hazlewood noted in his initial evaluation that Ms. Virgil had recently changed job duties, which required a great deal of standing and bending. As these are the activities that Ms. Virgil contends caused her injury, the Court finds this description of her job duties to be a sufficient basis for Dr. Hazlewood's opinion.

Finally, while Dr. Neely disagreed with Dr. Hazlewood's causation opinion, this does not automatically result in a finding that Dr. Hazelwood's opinion was incorrect. Ms. Virgil presented no medical proof suggesting Dr. Hazlewood's method or opinion were fundamentally unsound. Therefore, in order to meet her burden of overcoming the presumption of correctness of Dr. Hazlewood's opinion, Ms. Neely must establish that Dr. Neely's methodology or conclusions were more reliable.

The Court cannot find Ms. Virgil has met this burden. With the exception of the EMG/nerve conduction study results, Dr. Neely's examination does not appear to differ greatly from that of Dr. Hazlewood. He also performed range of motion measurements, straight leg raise testing, and neurologic tests such as reflexes and sensation. It is not clear whether Dr. Neely initially relied on the electrodiagnostic test results in his original IME diagnosis,[5] but as his revised IME does not mention those tests, it appears they did

---

[4] While the use of this publication is not statutorily required or favored, it suggests that Dr. Hazlewood's opinion was not a rash conclusion after an inadequate examination.

[5] It appears Dr. Neely relied on the EMG/nerve conduction study results more for the impairment rating calculation

not factor into his final diagnosis or causation opinion. In short, Dr. Neely's examination and methodology are not notably different from Dr. Hazlewood's, much less superior to the extent necessary to overcome the presumption.

Accordingly, this Court concludes that Ms. Virgil failed to establish by a preponderance of the evidence that she sustained a compensable injury primarily arising out of and in the course and scope of her employment with Nissan.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Virgil's cause of action against Nissan and its workers' compensation carrier is hereby dismissed with prejudice against refiling of same.

2. Costs of this cause of $150.00 are assessed against Nissan pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

3. Nissan shall prepare and file a statistical data form within ten business days of the date of this order, pursuant to Tennessee Code Annotated section 50-6-244 (2015).

**ENTERED this the 27th day of July, 2016.**

_____
**Dale Tipps**
**Workers' Compensation Judge**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal your case to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

---

than his causation opinion.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, this Order will become final by operation of law thirty calendar days after entry pursuant to Tennessee Code Annotated section 50-6-239(c)(7).**

**APPENDIX**

Technical record:

1.  Petition for Benefit Determination
2.  Post-Discovery Dispute Certification Notice
3.  Employee's Pre-Hearing Brief
4.  Employer's Compensation Hearing Brief
5.  Pre-Compensation Hearing Statement

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1.  Dr. Neely's Original IME report
2.  Dr. Neely's Revised IME report
3.  Transcript of Dr. Neely's May 24, 2016 deposition
4.  Indexed Medical Records
5.  Pages 141-143 of Ms. Virgil's Personnel File
6.  First Report of Injury
7.  Employee/Manager Medical Statement
8.  C-42 Physician Panel
9.  C-23 Notice of Denial
10. Transcript of Dr. Hazlewood's June 7, 2016 deposition
11. June 8, 2015 treatment notes from Nissan's on-site clinic
12. December 21, 2015, records from Murfreesboro Medical Clinic
13. Dr. Newton's causation questionnaire
14. Ms. Virgil's written discovery responses

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Zachary Wiley | | | X | zwiley@forthepeople.com |
| Thomas Tucker | | | X | tomtucker@bellsouth.net |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

10